Argued June 15; affirmed July 7, 1943

## CARTER *v.* CARTER
(139 P. (2d) 575)

Before Bailey, Chief Justice, and Kelly, Lusk and Brand, Associate Justices.

*Earl F. Bernard,* of Portland (Collier, Collier & Bernard, of Portland, on the brief) for appellant.

No appearance for respondent.

KELLY, J. Plaintiff and defendant intermarried on January 15, 1938. After their marriage, the parties, plaintiff and defendant, took up their abode on plaintiff's farm near Vancouver, Washington. In March, 1940, plaintiff instituted proceedings for a divorce in the Superior Court of the State of Washington for the County of Clark, at Vancouver, Washington. About two weeks later, those proceedings were dismissed. A short time thereafter, plaintiff again filed suit for

divorce at Vancouver, Washington. A property settlement was had, and on April 18, 1940, an interlocutory decree of divorce was rendered. On December 17, 1940, defendant filed an affidavit in said Washington court to the effect that plaintiff and defendant had resumed marital relations, and an order of dismissal of said second suit was entered.

When the divorce proceedings were instituted by plaintiff, defendant returned to Portland, Oregon, and occupied an apartment on Borthwick street. At about the same time plaintiff came to Portland and stayed at his son's home for a short time, then took lodgement in the Saint Elmo hotel, at Vancouver, Washington. During the latter part of January, 1941, plaintiff took up his habitat at the Lombard Apartments, 821 North Lombard street, Portland.

The record is conflicting as to whether plaintiff and defendant sustained marital relations while defendant lived on Borthwick street.

On November 15, 1940, defendant moved to a house on Jarrett street in Portland, where admittedly the parties cohabited as husband and wife.

It is evident that when the Washington divorce suits were instituted and thereafter, neither the plaintiff nor the defendant trusted the other to observe the sanctity of the marital vow of fidelity. Plaintiff objected to defendant's communication with her former husband. Defendant explains that this communication was caused by her concern for the welfare of her two children by her former husband. Defendant had been advised that she would have to undergo a surgical operation and her purpose in contacting the children's father was to ascertain how they could be cared for in a way satisfactory to their father while

defendant was in the hospital. Defendant was suspicious that plaintiff entertained some woman in his apartment. This reciprocative mistrust ripened into virulent irascibility and resulted in interchanges of infelicific insinuations and accusations. Several physical encounters accompanied their vocal discord.

The trial judge found that plaintiff had failed to prove a case entitling him to a decree of divorce. He found also that defendant had likewise failed to establish a cause for divorce. Defendant did not appeal from the decree of dismissal, and hence the only question before us is whether plaintiff is entitled to a divorce.

■ It is well settled that a decree of divorce will not be given to the vanquished merely because such party is vanquished. The final domestic battle between the parties hereto, like the others reflected in the record, is the subject of conflicting testimony. The plaintiff claims that the defendant assaulted him, breaking his glasses and bloodying his face. Defendant says she merely patted him with a skillet, and when he took it away from her and attempted to hit her with it she slapped at him, whereupon he threw her across the room on to a sack of potatoes fracturing the tibia of her right leg. Her physician diagnosed the case as a compressed fracture.

Plaintiff's loss of sleep caused by defendant's presence in plaintiff's apartment on Lombard street is stressed as the result of defendant's alleged cruel and inhuman treatment in thus visiting plaintiff. The record discloses that the visits by defendant to plaintiff's quarters were interspersed almost daily or nightly by plaintiff's visits to defendant's apartment on Jarrett street. *"Idcm Accio quod Titio jus esto."*

■ The trial judge had the advantage of hearing and seeing the witnesses. We find nothing in the record to support the claim that he erred in entering an order of dismissal.

The decree of the circuit court is affirmed.